# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARTER OAK OIL CO., INC. d/b/a<br>AIELLO HOME SERVICES,<br>    Plaintiff,<br><br>    v.<br><br>APPLIED UNDERWRITERS, INC., et al.,<br>    Defendants. | No. 3:17-cv-0689 (SRU) |

## RULING AND ORDER

Charter Oak Oil Co., d/b/a Aiello Home Services ("Aiello"), has alleged that its workers' compensation insurer, Applied Underwriters, Inc. ("Applied") and certain of Applied's affiliates, are liable for various violations of Connecticut insurance, unfair trade practice, and securities laws. Aiello's allegations include claims against Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRAC"), an Applied affiliate with whom Aiello entered into a Reinsurance Participation Agreement (the "RPA"). The RPA contains a forum selection clause providing that "ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF, RELATING TO OR BASED UPON THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY" must be brought in Nebraska (the "Forum Selection Clause"). All of the defendants moved to dismiss the complaint on *forum non conveniens* grounds, or, in the alternative, to transfer the case to the United States District Court for the District of Nebraska, arguing that the Forum Selection Clause applied to all claims by Aiello. Doc. # 13. I denied the defendants' motion, holding that (1) the Forum Selection Clause did not bind Aiello in disputes against any defendant other than AUCRAC, (2) the Forum Selection Clause did not apply to the specific claims brought by Aiello against AUCRAC, and that, (3) even if the Forum Selection Clause did apply to claims by Aiello against AUCRAC (or any other defendant), the Forum

Selection Clause was unenforceable under both Nebraska and federal law. Doc. # 21. AUCRAC has now moved for reconsideration of my ruling, only with respect to Aiello's claims against AUCRAC itself, and accordingly, has also moved to sever Aiello's claims against AUCRAC, for transfer of only those claims to Nebraska. Doc. # 23.[1] I grant the motion for reconsideration in order to clarify aspects of my prior ruling, but, for the reasons stated below, deny the requested relief. I thus adhere to my earlier decision denying transfer of any of Aiello's claims.

I.      Background

I assume all parties' familiarity with the relevant facts and procedural history, and briefly summarize only those parts necessary to explain this order.

The underlying dispute in this case concerns a novel insurance product known as "EquityComp" provided by Applied and its affiliates, including AUCRAC.[2] Applied marketed the EquityComp program to businesses throughout Connecticut as a workers' compensation insurance plan that would deliver substantial cost savings to insureds as long as workplace injury claims were minimized. Compl. at ¶ 10. On November 14, 2013, Aiello requested to purchase EquityComp insurance from Applied. Ex. C, Notice of Removal at 13, Doc. # 1-3. Aiello acknowledged in its request that issuance to Aiello of an EquityComp policy was contingent on Aiello executing an RPA. *Id.* Aiello executed the RPA with AUCRAC that same day, *id.* at 18, and another Applied affiliate, authorized to do business in Connecticut, issued EquityComp

---

[1] An identical copy of AUCRAC's motion for reconsideration and supporting documents was also filed at doc. # 22. The docket text associated with the filings at doc. # 22 indicate that these versions of the duplicate filings are on behalf of all the defendants, and seek the same relief. Accordingly, because I deny AUCRAC's motion at doc. #23 for the reasons stated in the following ruling, the identical motion at doc. # 22 is hereby denied for the same reasons.
[2] Applied is a Nebraska company with a principal place of business in Omaha, Nebraska. Compl. at ¶ 2, Doc. # 1-1. AUCRAC is an Iowa company with a principal place of business in Cedar Rapids, Iowa. *Id.* at ¶ 4. Neither Applied nor AUCRAC were authorized by the Connecticut Department of Insurance to issue workers' compensation insurance policies in Connecticut. *Id.* at ¶ 8.

insurance to Aiello, effective the next day, November 15, 2013, Ex. D, Notice of Removal at 2, Doc. # 1-4.

The RPA between Aiello and AUCRAC contained the Forum Selection Clause, which stated:

> ANY LEGAL SUIT, ACTION, OR PROCEEDING ARISING OUT OF, RELATED TO OR BASED UPON THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MUST ONLY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF NEBRASKA, IN EACH CASE LOCATED IN OMAHA AND THE COUNTY OF DOUGLAS, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION, OR PROCEEDING. . . . THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION, OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Ex. C, Notice of Removal at 16-17.

Following Aiello's decision not to renew its EquityComp coverage in November 2016, the parties began to dispute whether Aiello owed additional money to Applied. Jezouit Aff. at ¶¶ 15-20, Doc. # 16-1. On March 28, 2017, Aiello filed this suit in Connecticut Superior Court, alleging that Applied and its affiliates had violated the Connecticut Unfair Insurance Practices Act (CUIPA), Conn. Gen. Stat § 38a-816, the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110g, and the Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36b-29. *See* Compl. at ¶¶ 65–93. Aiello also sought a declaratory judgment that the unpaid premiums and capital deposit demanded by Applied were not based upon any premium calculation factors on file with the Connecticut Department of Insurance, and that the disputed premiums were therefore unenforceable under Connecticut law. *Id.* at ¶¶ 55-64. On April 26,

2017, the defendants removed this action to this court.  Also on April 26, 2017, AUCRAC filed a separate action in Nebraska state court, alleging, among other things, that Aiello had breached the RPA (the "Nebraska Action").[3]  Ex. B, Mot. to Dismiss, Doc. # 13-4.  On June 5, 2017, the defendants moved to dismiss or transfer the complaint to Nebraska, pursuant to the Forum Selection Clause in the RPA.  Doc. # 13.

On August 7, 2017, I held a hearing and denied the defendants' motion to dismiss or transfer the present action to Nebraska, Doc. # 20, and on September 12, 2017, I issued my written decision explaining the basis for my ruling, Doc. # 21.  I explained that (1) the Forum Selection Clause did not apply to Aiello in its relationships with any of the defendants other than AUCRAC; (2) the Forum Selection Clause did not apply to Aiello's claims against AUCRAC (or any of the other defendants); (3) Nebraska law did not permit enforcement of the Forum Selection Clause; and (4) federal law did not permit enforcement of the Forum Selection Clause.  Following my ruling, AUCRAC moved for reconsideration.  Doc. # 23.  I now grant the motion for reconsideration, in order to clarify the weight and justifications for of each of my previous findings (as pertain to AUCRAC) but, for the reasons that follow, deny the relief AUCRAC requests.

## II.    Legal Standard

The standard for granting motions for reconsideration is strict.  Motions for reconsideration "will generally be denied unless the moving party can point to controlling

---

[3] The Nebraska Action was subsequently removed to the United States District Court for the District of Nebraska, case number 8:17-cv-164.  Pursuant to the first-to-file rule, on January 4, 2018, the District of Nebraska court declined to exercise jurisdiction over AUCRAC's non-contractual claims in the Nebraska Action, and allowed AUCRAC to elect to either have its contractual claims dismissed without prejudice or transferred to this district. *AUCRAC v. Charter Oak Oil Co.*, 8:17-cv-164 (D. Neb. Jan. 4, 2018), Doc. # 27.  On January 15, 2018, AUCRAC requested that the District of Nebraska court transfer the Nebraska Action to this district, Notice, *AUCRAC v. Charter Oak Oil Co.*, 8:17-cv-164 (D. Neb. Jan. 16, 2018), Doc. # 28, and the District of Nebraska court granted that request a day later, *AUCRAC v. Charter Oak Oil Co.*, 8:17-cv-164 (D. Neb. Jan. 16, 2018), Doc. # 29.

decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, et al., *Federal Practice & Procedure* § 4478).

AUCRAC does not point to any intervening changes in controlling law or newly available evidence, so I consider here only whether severance and transfer of the claims against AUCRAC is necessary to correct clear error or prevent manifest injustice. AUCRAC argues that transfer to Nebraska of the claims against it is clearly required by the Forum Selection Clause. To determine whether the Forum Selection Clause is enforceable here, I must evaluate (i) whether the clause was reasonably communicated to the party resisting enforcement; (ii) whether the clause is mandatory or permissive; (iii) whether the claims and parties involved are subject to the clause; and (iv) assuming that the preceding factors have been satisfied, whether the resisting party can overcome the resultant presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

### III. Discussion

Neither party has suggested that the Forum Selection Clause was not reasonably communicated or was not mandatory (the first and second *Martinez* prongs), and no party has

5

challenged my ruling that the Forum Selection Clause does not apply to Aiello's claims against defendants other than AUCRAC (part of the third *Martinez* prong). Accordingly, the two issues in controversy here pertain to the third and fourth prongs of the *Martinez* framework. Namely, whether the claims against AUCRAC are within the scope of the Forum Selection Clause, and, if so, whether the Clause is enforceable.[4]

A. The Forum Selection Clause Does Not Apply to Aiello's Claims

The third prong of the *Martinez* framework, which asks whether the claims (or parties) at issue are subject to a forum selection clause, is an interpretive question that is normally analyzed by applying the body of law applicable to interpretation of the rest of the contract. *Martinez*, 740 F.3d at 217-18. In this case, the RPA contains a choice-of-law clause requiring that it be construed in accordance with Nebraska law.[5] As a general matter, therefore, Nebraska law should apply to the analysis of whether the Forum Selection Clause applies to Aiello's claims against AUCRAC. However, in its original motion to dismiss, AUCRAC did not cite to any law, Nebraska or otherwise, on this issue, *see* Mot. to Dismiss at 7, Doc. # 13-1, and, although AUCRAC correctly notes in its motion for reconsideration that Nebraska law should be applied, Mot. for Reconsideration at 6, Doc. # 23-1, AUCRAC then cites exclusively to federal case law in its argument, *id.* at 11-12. AUCRAC thus appears to have acquiesced in the use of federal precedents, *Martinez*, 740 F.3d at 223, and I "will assume from [AUCRAC's] briefing that [it] do[es] not rely on any distinctive feature of [Nebraska] law and apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause", *Phillips*,

---

[4] Arguably, AUCRAC's recent successful request in the Nebraska Action for transfer of its contract claims in that action to this district (in tension with the premise of its motion to transfer in this action) moots its request for reconsideration and transfer in this action. Because I have held that there is an independent basis for denying the motion to transfer the present action to Nebraska, and I write merely to clarify the foundations of that holding, I will not address that issue here further.

[5] Neither party has objected to application of Nebraska law to the interpretation of the RPA.

494 F.3d at 386; *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) ("The parties, however, make little reference to English contract law. In view of the parties' briefing, we will assume that they do not rely on any distinctive features of English law and we will therefore base our decision on general contract law principles.").

In its original motion, AUCRAC argued only that the claims in dispute "squarely arise[] out of the parties' rights and obligations under the RPA". Mot. to Dismiss at 7. I pointed out in my original ruling that *Phillips* holds otherwise. Ruling and Order at 11-12. Aiello's claims all allege statutory violations based on actions that either (a) predated the RPA and deceptively induced Aiello to enter into the RPA or other agreements, or (b) can be considered a part of such pre-contractual conduct inasmuch as they allegedly furthered the deception achieved by the initial misrepresentations. *Id.* The Second Circuit held in *Phillips* that statutory claims will not "arise out of" the contract containing the forum selection clause unless the rights or duties being sued upon "originate from the . . . contract". 494 F.3d at 390-91. Although AUCRAC may have occasionally carried out its alleged deception through statements made or omitted from the RPA, such deception is alleged to be wrongful regardless of the contractual nature of any such statements.[6]

In its motion for reconsideration, AUCRAC correctly (albeit for the first time) points out that a claim that does not "arise out of" a contract may still be covered by a forum selection clause that applies to suits not merely "arising out of" but also "related to" the contract.[7] Mot.

---

[6] As the remaining paragraphs of this section clarify, although the citation to *Phillips* in my original ruling was sufficient to dispose of the only argument raised by AUCRAC in its original motion, differences between the forum selection clauses at issue in this case and in *Phillips* prevent *Phillips* from being the exclusive guide to interpretation of the Forum Selection Clause in the RPA. Subject to this clarification, and according to the reasoning set out in what follows, I do not alter my previous holding that the Forum Selection Clause does not cover Aiello's claims against AUCRAC.

[7] There is actually some disagreement in Second Circuit precedent regarding whether clauses containing just "arising out of" as opposed to "related to" language should be interpreted more or less broadly than each other. *Compare Phillips*, 494 F.3d at 389 ("We do not understand the words 'arise out of' as encompassing . . . claims that

7

for Reconsideration at 11. This is pertinent because the clause at issue in *Phillips* applied only to claims "aris[ing] out of" the pertinent contract, while the present Forum Selection Clause states that it applies to "[a]ny legal suit, action, or proceeding arising out of, *related to* or based upon the agreement", Ex. C, Notice of Removal at 16 (emphasis added), and *Phillips* itself observes that the interpretation of a forum selection clause requires examination of the precise language of the clause, and, therefore, the "discount[ing] [of] the precedential weight of cases that deal with dissimilarly worded clauses". 494 F.3d at 389-90. Accordingly, the holding in *Phillips* is not dispositive here, and an interpretation of the full scope of the Forum Selection Clause must address any limitations on the meaning of the phrase "related to . . . the agreement".

The Second Circuit has generally given the phrase "related to" an expansive reading. *See, e.g.*, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) ("The term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection."). That does not mean, however, that the application of the term should be unbounded. As Justice Stevens observed in dissenting from a decision interpreting an arbitration clause[8]:

> The federal policy favoring arbitration cannot sustain the weight that the Court assigns to it. A clause requiring arbitration of all claims "relating to" a contract surely could not encompass a claim that the arbitration clause was itself part of a contract in restraint of trade. Nor in my judgment should it be read to encompass a claim that relies, not on a failure to perform the contract, but on an independent violation of federal law. The matters asserted by way of defense do not control the character, or the source, of the claim that Soler has asserted. Accordingly,

---

may only 'relate to', be 'associated with', or 'arise in connection with' the contract.") *with Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) ("We find no substantive difference in the present context between the phrases 'relating to', 'in connection with' or 'arising from'."). But, even in *Roby*, the finding of common meaning between the phrases "arising out of" and "relating to" resulted in a broad interpretation that covered the claims at issue. 996 F.2d at 1361.

[8] It is worth noting that arbitration clauses benefit from an even stronger presumption of coverage than do forum selection clauses. *See Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

>simply as a matter of ordinary contract interpretation, I would hold that Soler's
>antitrust claim is not arbitrable.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 645 (1985) (Stevens, J, dissenting). Justice Stevens's approach does not require that all statutory claims be excluded from coverage, *Phillips*, 494 F.3d at 388-89 ("[W]e examine the substance of those claims, shorn of their labels. . . . [W]e cannot presume that the parties intended to exclude all statutory claims."), and some courts have expanded the meaning of "related to" far enough to capture statutory claims based on events that predate the agreement at issue, *see, e.g.*, *Roby*, 996 F.2d at 1357-61[9]; *but see TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34-35 (2d Cir. 2011) (summary order) (applying a mix of California and federal law to find pre-agreement behavior by Google covered by the subsequent agreement's forum selection clause—but only because the clause applied not just to claims relating to the agreement, but to claims "arising out of or relating to th[e] agreement *or the Google Program*" at issue, which program had predated the agreement (emphasis in original decision)). In *Martinez*, the Second Circuit suggested an approach to limiting the meaning of forum selection clauses consistent with Justice Stevens's guidance in *Mitsubishi*, when the Court interpreted English law as carving out any claims that undermine the existence of the contract at issue. 740 F.3d at 224 (citing *Fiona Trust & Holding Corp. v. Privalov,* [2007] EWCA (Civ) 20, [18]).

Influenced by the need for limiting principles set out by Justice Stevens in *Mitsubishi*, and the approach suggested in *Martinez*, I reaffirm my original ruling that the claims in the current case are outside of the scope of the Forum Selection Clause. Aiello's statutory claims

---

[9] Most precisely, the forum selection clause at issue in *Roby* provided coverage for claims "for all purposes *and in connection with*" the relevant agreements, and an arbitration clause at issue provided coverage for "claim[s] *relating to*" the agreements, but, as pointed out in note 6, *supra*, the *Roby* court found "no substantive difference in the present context between the phrases 'relating to' [or] 'in connection with'". 996 F.2d at 1359 (all emphases in original; first alteration in original).

address deceptive behavior predating the RPA containing the Forum Selection Clause, and the alleged deceptive behavior potentially induced the agreement to the RPA. Because I cannot disentangle the extent to which the alleged misrepresentations induced agreement to the Forum Selection Clause itself, I hold that the claims at issue here are not covered by the Forum Selection Clause's general reference to claims "related to" the RPA. I do not go so far as to base my decision on the principle that a forum selection clause *could not* apply to such claims, and hold only that, at a minimum, for such an extreme interpretation in favor of coverage, the language of the clause must speak more clearly to its coverage of such claims.[10] In so holding, I am cognizant of those district courts within this Circuit that have held otherwise, *e.g.*, *SLSJ, LLC v. Kleban*, 2015 WL 1973307, at *15 (D. Conn. Apr. 30, 2015); *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2015 WL 4634541, at *29 (S.D.N.Y. Aug. 4, 2015), *amended*, 2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015); *see also Autoridad de Energia Electrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 146 (1st Cir. 2017), but I do not agree that the authorities to which those courts cite provide the necessary support for the expansion in the reach of generic forum selection clauses that would be created by their decisions. Finally, I am also cognizant that general fraudulent inducement of a contract is not, by itself, grounds for finding a forum selection clause unenforceable under the separate fourth prong of the *Martinez* framework. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 533 (1974) ("This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause

---

[10] The parties here did not agree, for example, that all disputes between them, or even all disputes arising out of negotiation of the contract, would be heard in Nebraska. Thus, there must be some limits to the substantive claims subject to the Forum Selection Clause. I hold that the Forum Selection Clause can only capture claims that are strictly "related to . . . [the RPA], or the transactions contemplated [t]hereby", and not merely claims that are related to events or issues that are *themselves* related to the RPA or the transactions contemplated thereby. A contrary interpretation of "related" that allows the cumulative, recursive application of the "related to" relationship would progressively balloon the coverage of forum selection clauses to an infinite number of claims, at least some of which the parties would not have conceived they were capturing within the clause. That cannot be consistent with the need for some limitation suggested by Justice Stevens in *Mitsubishi*.

is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."). I do not, however, interpret *Scherk* to require the distinct finding, under a separate prong of the *Martinez* analysis, that a forum selection clause's application to disputes "related to" the contract includes such situations of fraudulent inducement.

B. The Forum Selection Clause Is Unenforceable

Because I have held that the Forum Selection Clause does not cover Aiello's claims against AUCRAC, the motion to dismiss or transfer must be denied regardless of whether the Forum Selection Clause is enforceable with respect to Aiello's claims against AUCRAC. I address the latter issue however, in order to clarify certain statements made in my original ruling.

In my original ruling, I engaged in some analysis of enforceability pursuant to Nebraska law—specifically, the impact on enforceability of Neb. Rev. Stat. § 25-414. Ruling and Order at 13-23. The analysis of Nebraska law cannot be grounded in the fourth prong of the *Martinez* framework, which requires enforceability to be analyzed according to federal law. *Martinez*, 740 F.3d at 217-18. However, Nebraska law, which, pursuant to the third *Martinez* prong, is relevant to the interpretation of the Forum Selection Clause, does suggest that enforceability pursuant to section 25-414 must play a role in the construction of the RPA under the third *Martinez* prong. *Woodmen of World Life Ins. Soc. v. Puccio*, 499 N.W.2d 85, 88 (Neb. App. 1993) ("The law of this state is an inherent part of every contract; every contract is made with reference to and subject to the existing law; and every law affecting the contract is read into it and becomes a part thereof. Therefore, § 25–414(1) is part of the subject contract." (citation omitted)), *overruled on other grounds by Woodmen of the World Life Ins. Soc. v. Yelich*, 549 N.W.2d 172 (Neb. 1996). In *Puccio*, the Nebraska Court of Appeals found the forum selection clause at issue

11

unenforceable, and held that the contract could thus not be interpreted as requiring the claims to be brought in Nebraska. *Puccio*, 499 N.W.2d at 86-88. Importantly, I also find that *Puccio*, which was decided on facts relevantly similar to those at issue here, suggests that the present Forum Selection Clause is unenforceable under Nebraska law. *See id.*

Problematically, the federal policies underlying the *Martinez* requirement that federal law control the enforceability analysis in the fourth prong would also appear to prevent any enforceability analysis under Nebraska law from playing a role in the third prong. *See Martinez*, 740 F.3d at 219-20 (observing that federal policy in favor of forum selection clauses would be subverted if enforceability were evaluated pursuant to the policy of a jurisdiction disfavoring such clauses). Following *Martinez*, I do not ground my decision of either the third or fourth prong on the issue of enforceability under Nebraska law. I note, however, that there is some risk that the categories of analysis set out in *Martinez* cannot be adhered to cleanly.

Analysis of the enforceability of the Forum Selection Clause pursuant to federal law requires consideration of whether enforcement would be "unreasonable or unjust". *Phillips*, 494 F.3d at 383. In my original ruling I held that the inefficiencies and risk of inconsistent judgments that would result from litigation in Nebraska would render enforcement of the Forum Selection Clause unjust. Ruling and Order at 23-24. I am cognizant that other courts in this Circuit have declined to credit such arguments in evaluating forum selection clauses. *See, e.g.*, *La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) (holding that "principles of judicial efficiency and uniformity" would not support nonenforcement; "it might be more efficient to dispose of the entire case in one court, but that is not the standard for overcoming forum selection clauses."). In *Street, Sound Around Electronics v. M/V Royal Container*, the district court held that "[t]he possibility of

multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause." 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999). The point made by these courts is well taken, so I write here to clarify my previous statements on the role of efficiency arguments in determining enforceability: I do not intend to suggest that the inefficiency of multiple parallel proceedings should, by itself, render the Forum Selection Clause unenforceable. I merely note that, where I have already held that the meaning of the Forum Selection Clause does not cover Aiello's claims, Aiello could certainly not be said to have fully foreseen the impact of multiple proceedings with respect to those claims, and it is thus at that point that the injustice of inefficient proceedings becomes meaningful.

**IV.     Conclusion**

For the reasons stated, I grant the motion for reconsideration, Doc. # 23, but deny the requested relief. The Forum Selection Clause should not be interpreted as covering Aiello's present claims against AUCRAC, and neither Aiello nor the federal court system should be forced to bear the burden of multiple proceedings to adjudicate Aiello's claims against the various defendants. The motion to dismiss or transfer, Doc. # 13, remains denied, and AUCRAC's motion to sever, Doc. # 23, is also denied.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge